IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00137-CMA-MJW

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR UNITED WESTERN BANK,

        Plaintiff,

v.

CHARLES J. BERLING,
JAMES H. BULLOCK,
ANTHONY C. CODORI,
BERNARD C. DARRÉ,
GARY G. PETAK,
WILLIAM D. SNIDER,
CINDY J. STERETT,
JOHN S. UMBAUGH, and
SCOT T. WETZEL,

        Defendants.

---

**PROTOCOL FOR DISCOVERY OF ELECTRONICALLY-STORED INFORMATION AND ORDER** (Docket No. 3 41)

---

Plaintiff Federal Deposit Insurance Corporation as Receiver for United Western Bank ("FDIC-R") and Defendants Charles J. Berling, James H. Bullock, Anthony C. Codori, Bernard C. Darré, Gary G. Petak, William D. Snider, Cindy J. Sterett, John S. Umbaugh and Scot T. Wetzel (collectively "Defendants") and their respective counsel hereby stipulate to the following terms and conditions concerning the production of electronically-stored information ("ESI") as follows:

    1.    This action relates to United Western Bank ("UWB" or the "Bank"). On January 21, 2011, the Office of Thrift Supervision ("OTS") closed UWB and appointed the FDIC as Receiver. At that time, the FDIC-R succeeded to all the rights, titles, and

privileges of UWB and its depositors, account holders, and stockholders. 12 U.S.C. § 1821(d)(2)(A)(i).

2. This Protocol for the Discovery of Electronically-Stored Information ("ESI Protocol" or "Protocol") applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37, and, insofar as it relates to ESI, this Protocol applies to Fed. R. Civ. P. 45 in all instances where the provisions of Fed. R. Civ. P. 45 are the same as or substantially similar to Fed. R. Civ. P. 16, 26, 33, 34, or 37. As used herein, the word "Party" means the FDIC-R or Defendants, and the word "Parties" means the FDIC-R and Defendants. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Fed. R. Civ. P. 45(c)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

3. In this Protocol, the following terms have the following meanings:

(a) "Load File(s)" means the file necessary to load data into a reviewable database. A Load File can, for example, specify which individual pages belong together as a document, which attachments are included with a document, where a document begins and ends, and which Metadata is associated with a document.

(b) "Metadata" means: (i) information embedded in a Native File, including but not limited to the information identified in Exhibit A, that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; and

(iii) information created by the processing of a file into the format used by a reviewable database (e.g., BegBates, BegAttach). Metadata is a subset of ESI.

(c) "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified. Native Files are a subset of ESI.

(d) "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the Parties or order of the Court, a Static Image should be provided in Tagged Image File Format ("TIFF" or "TIF"). If a TIFF or TIF file cannot be created, then the Static Image should be provided in Portable Document Format ("PDF"). If Load Files or optical character recognition ("OCR") text files were created in the process of converting Native Files to Static Images, or if Load Files may be created without undue burden or cost, Load Files shall be produced as set forth in Exhibit A.

4. The provisions set forth in Exhibit A shall govern the production of ESI.

5. The FDIC-R has possession, custody, or control of ESI that is maintained by the FDIC-R in its Data Management Services ("DMS") databases; and:

(a) That the FDIC-R or its contractors obtained from the computers, servers, and other data storage systems of the Bank;

(b) That was created on or before January 21, 2011 and that the FDIC-R or its contractors obtained from the computers, servers, and other data storage systems of First Citizens Bank & Trust Company of Raleigh, North Carolina ("First Citizens"); or

(c) That the FDIC-R or its contractors created on or after January 21, 2011, by scanning hard-copy records of the Bank (collectively, the "UWB ESI").

6. Subject to this Protocol and the Stipulated Protective Order, the FDIC-R shall produce UWB ESI to Defendants that is responsive to any request for production from Defendants; provided, however, that the FDIC-R reserves the right to withhold or redact UWB ESI based on any applicable privilege or protection from disclosure.

7. Some of the UWB ESI may not be completely text searchable. If Defendants determine that they require text searches of this ESI, the Parties will discuss and attempt to reach an agreement regarding the OCR processing and production of these documents and the costs involved in doing so. In connection with the procedures contemplated by Paragraph 9 below, the FDIC-R will provide Defendants with indices identifying: (a) the DMS databases that are not text-searchable; and (b) the individuals and locations from whom hard copy documents were scanned by the FDIC-R after becoming receiver of the Bank, to the extent that information is available. If the Parties are unable to reach an agreement, either Party will have the right to address issues relating to the non-text-searchable UWB ESI with the Court. Any issues relating to the DMS databases that are not text-searchable will not be subject to this Protocol, except with respect to the procedure addressed in this paragraph, but will instead be addressed under the general rules addressing the production of ESI.

8. The Parties agree that searches of the UWB ESI will be restricted to the period of time between January 1, 2005, through the closing of UWB, January 21, 2011. The date restriction will apply to the created date for loose files and the time sent for parent email in email files. Nothing in this Protocol prevents Defendants from

separately requesting the production of documents other than the UWB ESI, including documents created, edited, or modified before January 1, 2005 or after January 21, 2011.

9.  The Parties agree that certain DMS databases will be searched in order to identify responsive documents for production. The DMS databases available for searching are numbered in Exhibit B. Defendants shall collectively identify an initial list of search terms to run across the UWB ESI, the DMS databases to which the proposed search terms should be applied, and the email custodians to which the search terms should be applied. Thereafter, the Parties shall meet and confer in good faith to establish the final agreed-upon search terms. In order to facilitate the good faith negotiation of search terms between the FDIC-R and Defendants, the FDIC-R shall provide search term hit reports to Defendants which readily identify the number of unique documents which hit upon each identified search term requested by Defendants. This search term process will be iterative and might require several iterations of revised terms and hit reports. This search term process shall be limited to a reasonable number of iterations, consistent with the facts of this case. Defendants may identify additional search terms or parameters as may be reasonable and appropriate following the completion of any particular search.

10.  If the Parties are unable to agree upon search terms after conferring in good faith, any Party may raise the issue with the Court by motion.

11.  After the Parties have agreed upon search terms or established search terms with the assistance of the Court, the FDIC-R shall search DMS for ESI that contains the final search terms. The FDIC-R shall have an opportunity to review the

ESI and redact or withhold documents pursuant to any applicable privilege or protection from disclosure. After the FDIC-R searches DMS using the final search terms, the FDIC-R shall provide Defendants with a Relativity Load File, containing the ESI captured by the final search terms, pursuant to this Protocol.

12. If, upon review of the documents produced in the Relativity Load File, Defendants determine that additional and different searches may lead to the production of additional discoverable information, they may propound a separate request for production, and the parties will address new round(s) of requests to elicit such information pursuant to the procedure outlined in Paragraphs 9-11 of this Protocol.

13. The FDIC-R reserves the right to contest and object to Defendants' search terms and requests, including objections based upon burdensomeness or cost. As described in Exhibit A, documents will generally be produced as Native Files. However, Native Files are required to be converted to Static Images by the Party introducing them into evidence (*e.g.*, deposition or trial exhibits) and provided to the other Party prior to their use in the litigation. In addition, the Party must Bates-number the Static Images as specified in Exhibit A. A Static Image will be provided in TIFF or TIF. If a TIFF or TIF file cannot be created, then the Static Image will be provided in PDF.

14. If Defendants are in possession of ESI, including, without limitation, email and documents of various types, then subject to the terms of this Protocol and the Stipulated Protective Order, Defendants shall produce to the FDIC-R ESI that is responsive to any request for production from the FDIC-R; provided, however, that Defendants reserve the right to withhold or redact ESI based on any applicable privilege or protection from disclosure.

15.     Pursuant to Rule 502(d) of the Federal Rules of Evidence, no applicable privilege or ground for withholding production is waived by production of documents or disclosure of information pursuant to this Protocol, and the Parties shall not have to meet the requirements of Fed. R. Evid. 502(b)(1)-(3). Upon demand, the receiving Party shall return any paper copies to the producing Party and delete all electronic copies of privileged or protected ESI produced pursuant to this Protocol. Similarly, each Party has a duty to notify a producing Party if it reasonably believes that the ESI from the producing Party contains information that may be protected by any applicable privilege or ground for withholding production. Documents protected from disclosure by any applicable privilege or doctrine shall be logged in accordance with Section 17 of the Stipulated Protective Order in this action. The privilege log shall be made available within a reasonable time of the document production. The Parties agree, however, that the FDIC-R shall not be required to log any redactions or withholdings from production of information consisting of, summarizing, or describing any suspicious activity report ("SAR"). To the extent that the Parties disagree over the application of these principles or challenge the privileged nature of produced ESI, the receiving Party shall not make use of the ESI in question until the matter is resolved by the Court.

16.     Nothing in this Protocol requires the FDIC-R or Defendants to produce again information that was produced to the other Party before this Protocol was entered by the Court.

17.     Nothing herein shall waive or otherwise prejudice the Parties' respective rights to object to any request for production, including any search terms proposed

pursuant to this Protocol, on grounds provided by the Federal Rules of Evidence, the Federal Rules of Civil Procedure, or other controlling law.

18. The Parties agree that if ESI is sought from third parties through formal discovery, the Parties will attempt, to the extent possible, to use a protocol similar to this Protocol for such discovery with the consent of the third party or by order of the Court.

19. The Parties reserve the right to seek modification to this ESI Protocol by first conferring, and if resolution cannot be reached, by seeking intervention of the Court.

DATED: June 30, 2014

By: s/ Daniel P. Larsen
**Daniel P. Larsen**
**Lori Irish Bauman**
**Jeff M. Peterson**
ATER WYNNE LLP
Suite 900
1331 NW Lovejoy Street
Portland, OR 97209
Telephone: (503) 226-1191
FAX: (503) 226-0079
Email: dpl@aterwynne.com
Email: lib@aterwynne.com
Email: jmp@aterwynne.com

**Paul H. Schwartz**
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, CO 80302
Telephone: (303) 530-3452
FAX: (303) 530-4071
Email: pschwartz@sgslitigation.com

Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for United Western Bank

By: s/ Matthew Rawlinson
**Matthew Rawlinson**
**Allison Davidson**
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
FAX: (650) 463-2600
Email: matt.rawlinson@lw.com
Email: allison.davidson@lw.com

**Phillip A. Parrott**
CAMPBELL KILLIN BRITTAN & RAY, LLC
Suite 200
270 St. Paul Street
Denver, CO 80206
Telephone: (303) 394-7202
FAX: (303) 322-5800
Email: pparrot@ckbrlaw.com

Attorneys for Defendants

- 8 -

## ORDER

**IT IS SO ORDERED** on this ___7TH___ day of ___July___, 2014, that this case shall be governed by the terms and conditions of the above ESI Protocol.

_____

Michael J. Watanabe
United States District Court Magistrate Judge

## **EXHIBIT A TO ESI PROTOCOL**

**Form of Production for Email**

All electronic email from Windows-Based ESI ("WESI") shall be produced in a Load File that is complete with full text extracts and the fields of Metadata listed below, to the extent Metadata is available. If a Party converts an email from WESI into a Static Image and produces the Static Image, the producing Party shall produce the full text extract and Metadata of the Native File used to create the Static Image to the extent Metadata is available and not privileged.

1. From (Name)
2. Author Meta (Last editor of attachment/e-doc)
3. Bates Begin
4. Bates End
5. Bates Attach Begin
6. Bates Attach End
7. BCC
8. CC
9. Sent To
10. COMPPATH (Complete Filename and path)
11. Custodian (Natural person or device in possession of the record at the time of collection)
12. Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)
13. Doc ID (Document Control Number)

14. Group Identifier (Full range of records between beginning parent document and ending child document)
15. Document Type (Field describing the family relationship (parent or attachment) of a record
16. Extracted Text (Text of emails, nested email body, or raw text from images, edocs, or attachments)
17. MD5 Hash
18. Application (Program commonly used to access the record)
19. Subject (email subject line)
20. Title Meta (Title of attachment/stand alone edoc Metadata)
21. Sent Date (Date email was sent from sender)
22. Sent Time (Time email was sent from sender)
23. Last Modified Date (Full date edoc was modified before saving/sending)

Email shall be produced along with attachments to the extent the message and/or any attachment is responsive, relevant, and not privileged. As a general matter, subject to specific review, a message and its attachment(s) shall not be withheld from production based on the fact that one or more attachments are privileged, otherwise protected from disclosure, or non-responsive. To the extent the message and/or one or more attachments is privileged or otherwise protected from disclosure, the non-privileged, non-protected documents shall be produced along with placeholders indicating whether the individual record was withheld as privileged or otherwise protected from disclosure.

## Form of Production for Other WESI

All other WESI (including attachments to electronic mail) shall be produced in a Load File that is complete with full text extracts and the fields of Metadata listed below, to the extent the Metadata is available. If a Party converts any WESI into a Static Image and produces the Static Image, the producing Party shall produce the full text extract and Metadata of the Native File used to create the Static Image to the extent Metadata is available and not privileged.

1. Author Meta (Last editor of attachment/e-doc)
2. Bates Begin
3. Bates End
4. Bates Attach Begin
5. Bates Attach End
6. COMPPATH (Complete Filename and path)
7. Custodian (Natural person or device in possession of the record at the time of collection)
8. Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)
9. Doc ID (Document Control Number)
10. Group Identifier (Full range of records between beginning parent document and ending child document)
11. Document Type (Field describing the family relationship (parent or attachment) of a record

12. Extracted Text (Text of emails, nested email body, or raw text from images, edocs, or attachments)

13. MD5 Hash

14. Application (Program commonly used to access the record)

15. Title Meta (Title of attachment/stand alone edoc Metadata)

16. Created Date (Contains the date the edoc was created)

17. Created Time (Contains the time the edoc was created)

18. Last Modified Date (Full date the edoc was modified before saving/sending)

**Native Production**

Generally, all WESI, including emails and non-email documents, shall be produced by the Parties as Native Files in Load Files. Exceptions may include documents imaged for redaction purposes prior to release for review and production or documents scanned by the FDIC-R after being named Receiver for UWB. Each WESI Native File produced by the FDIC-R will be renamed at the file level with a Bates number in the following format: FDIC-R-UNWB-0000001. The Bates number shall be the default unique document identification number. The Bates number will be populated in the Bates Begin and Bates End Metadata fields. Because Native Files will be Bates numbered at the file level, the Bates Begin and Bates End Metadata fields for a particular Native File will be identical. As set forth herein, the Bates Begin and Bates End Metadata fields shall be included within the production as separate Metadata fields within the Data ("DAT") or Document Image Information ("DII") Load File. Each Native File's original filename will be included in the COMPPATH Metadata field. The Parties

agree that the first Party to present a Native File or an image of a Native File as an exhibit (deposition, trial, etc.), as an attachment to a pleading, or otherwise enter the image of the Native File for the first time into evidence, shall convert the Native File to a Static Image (*e.g.*, TIFF, TIF, or PDF), brand the Static Image with the Bates number, and provide a copy of the Native File to the other side's counsel prior to using the Native File. Each Static Image page shall be branded consecutively with the Bates number plus a suffix consisting of an underscore and number for each page comprising the entire imaged document—for example, (FDIC-R-UNWB-0000001_001, FDIC-R-UNWB-0000001_002, etc.).

### Load Files

All WESI shall be produced along with an IPRO, Opticon, or Summation DII Load File indicating Bates numbers and document breaks as applicable. Metadata shall be produced in Concordance DAT format, DII format and summary text file for Summation. Extracted full text shall be provided in Text ("TXT") file format at the document level. Non-Windows-based applications and data shall be subject to the same production requirements to the extent technically and legally feasible.

### Duplicates

To avoid the production of more than one copy of a particular unique item, the Parties shall use industry standard MD5 (or SHA-1) hash values within (1) all emails identified for production, and (2) all loose electronic files identified for production. The Parties will not de-duplicate attachments to emails against loose electronic files.

### Other Methods to Streamline Discovery

The Parties agree to meet and confer in good faith about any other technology or

process that a producing Party proposes to use to streamline the culling, review, and production of ESI (*e.g.*, email threading, near de-duplication, technology assisted review). The Parties shall make reasonable good faith efforts to resolve any objections to the use of such technology or process before seeking relief from the Court.

### Production Media

Documents shall be produced on external hard drives or readily accessible computer or electronic media, *e.g.*, CDs, DVDs, or flash or thumb drives ("Production Media"). All Production Media should have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for Native Files. The Production Media shall identify: (1) the producing Party's name; and (2) the production date.

### Color

Where the original of a produced document is in color, and color is material to the interpretation of the document, the receiving Party may request that the document be produced in color (whether electronic or paper). All documents produced as Static Images will initially be produced in black and white.

### Inaccessible Data

The Parties need not collect documents stored on disaster recovery back up tapes unless a showing of specific need is made.

## EXHIBIT B TO ESI PROTOCOL

1. UW Fileshares and Network Shares *

2. UW BIDS Domestic Wire Transaction Details

3. UW BIDS International Wire Transaction Details

4. UW BIDS Wire Transaction Report Details

5. UW Email Database *

6. UW EWire Wire Transactions Details

7. UW FIS IBS Metavante Customer Information

8. UW FIS IBS Metavante Deposit Analysis Cycle Addtl Information

9. UW FIS IBS Metavante Deposit Analysis Cycle Information

10. UW FIS IBS Metavante Deposit Daily Transaction Addtl Details

11. UW FIS IBS Metavante Deposit Daily Transaction Details

12. UW FIS IBS Metavante Deposit Monthly Additional Information

13. UW FIS IBS Metavante Deposit Monthly Information

14. UW FIS IBS Metavante Deposit Monthly Trans Acct Aggr Info

15. UW FIS IBS Metavante Loan Billing Information

16. UW FIS IBS Metavante Loan Collateral Information

17. UW FIS IBS Metavante Loan Commitment Information

18. UW FIS IBS Metavante Loan Escrow Information

19. UW FIS IBS Metavante Loan Master Details

20. UW FIS IBS Metavante Loan Notes Fee Information

21. UW FIS IBS Metavante Loan Notes Information

22. UW FIS IBS Metavante Loan Participation Information

23. UW FIS IBS Metavante Loan Payment History Transaction

24. UW FIS IBS Metavante Loan Payment Schedule Information

25. UW FIS Treev Statements and Reports

26. UW Forensic Data 2*

27. UW Forensic Data 3*

28. UW Forensic Data Email*

29. UW Forensic Data Email 2*

30. UW FPS GoldVision Statements and Reports

31. UW Fundtech PayPlus Incoming Wire Transactions

32. UW Fundtech PayPlus Incoming Wire Transactions Part2

33. UW Fundtech PayPlus Outgoing Wire Transactions

34. UW Fundtech PayPlus Outgoing Wire Transactions Part2

35. UW Harland LaserPro Customer Master Information

36. UW Harland LaserPro Loan Origination Details

37. UW Harland LaserPro Loan Underwriting Information

38. UW Microsoft Navision AP Master

39. UW Microsoft Navision AP Transaction

40. UW Microsoft Navision GL Master

41. UW Microsoft Navision GL Transaction

42. UW Microsoft Navision Journal Transaction 39

43. UW Microsoft Navision Miscellaneous Data

44. UW Microsoft Sharepoint User Documents*

45. UW PCFS2000 Broker Dealer Master Details
46. UW PCFS2000 Broker Dealer Trans History Details
47. UW PCFS2000 Loan Manager GL History Details
48. UW PCFS2000 Loan Manager Loan Billing DetailS
49. UW PCFS2000 Loan Manager Loan Collateral Details
50. UW PCFS2000 Loan Manager Loan Customer Details
51. UW PCFS2000 Loan Manager Loan Disbursement and Deposit Info
52. UW PCFS2000 Loan Manager Loan Master
53. UW PCFS2000 Loan Manager Loan Master Additional
54. UW PCFS2000 Loan Manager Loan Participation Details
55. UW PCFS2000 Loan Manager Loan Payment History
56. UW PCFS2000 Loan Manager Loan Pool History Additional Details
57. UW PCFS2000 Loan Manager Loan Pool History Details
58. UW PCFS2000 Loan Manager Loan Transaction History
59. UW Scanned Documents*

An asterisk ("*") indicates unstructured data within.